*Dennis Merchant v. State of Maryland*, Misc. No. 16, September Term 2015, Opinion by Greene, J.

*Marshall Tyrone Stoddard v. Department of Health and Mental Hygiene*, No. 81, September Term 2015, Opinion by Greene, J.

**CRIMINAL PROCEDURE — MENTAL HEALTH — RELEASE FROM COMMITMENT**

After an administrative hearing on a petition for release or revocation of conditional release, the Circuit Court reviews the administrative findings and recommendations on the record before the administrative law judge. The Circuit Court determines whether there was substantial evidence to support the administrative law judge's findings and recommendations.

Circuit Court for Prince George's County
Case No.  CT00-0536X
Case No.  CT10-0648X
Argued:  March 7, 2016

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 16 and No. 81
September Term, 2015

---

DENNIS MERCHANT

v.

STATE OF MARYLAND

---

MARSHALL TYRONE STODDARD

v.

DEPARTMENT OF HEALTH AND MENTAL
HYGIENE

---

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

---

Opinion by Greene, J.

---

Filed:  May 23, 2016

*Battaglia, J., now retired, participated in the hearing and
conference of this case while an active member of this
Court; after being recalled pursuant to the Constitution,
Article IV, Section 3A, she also participated in the
decision and adoption of this opinion.

In this case, we address the standard of review applicable to a circuit court's review of the findings and recommendations of an Administrative Law Judge (ALJ) for the grant or revocation of a conditional release for a "committed person"[1] pursuant to Md. Code (2001, 2008 Repl. Vol., 2015 Cum. Supp.), §§ 3-114 et seq., of the Criminal Procedure Article ("CP"). The statutory scheme of CP, Title 3: Incompetency and Criminal Responsibility in Criminal Cases was interpreted previously in *Byers v. State*, 184 Md. App. 499, 966 A.2d 982 (2009).

The case of *Dennis Merchant v. State of Maryland* is before us by way of certified question pursuant to Maryland Rule 8-304.[2] The case of *Marshall Tyrone Stoddard v.*

---

[1]A "committed person" is "a person committed to the [Department of Health and Mental Hygiene] as not criminally responsible under the test for criminal responsibility." CP § 3-101(b).

[2] Maryland Rule 8-304 provides:

> (a) **Initiation.** At any time before issuance of a mandate, the Court of Special Appeals or the panel of that Court to which the action has been assigned may certify a question of law or the entire action to the Court of Appeals. Upon transmission to the Court of Appeals, a copy of the certification shall be forwarded to the Chief Judge of the Court of Special Appeals and to the parties. The Court of Appeals may consider the certification pursuant to its authority to issue a writ of certiorari on its own motion.
> (b) **Content.** The certification shall briefly describe the action, state the question of law and the facts on which the question arises, and state the reason for certification.
> (c) **Disposition of certification.** The Court of Appeals may refuse the certification or may issue a writ of certiorari that (1) accepts the certification as submitted, (2) modifies the questions of law certified, (3) includes the entire action although only a question of law was certified, or (4) limits review to only a question of law although the entire action was certified. The Clerk of the Court of Appeals shall send the order refusing the certification or the writ of certiorari to the Court of Special Appeals and to the parties.
> (d) **Record extract and briefs.** If the Court of Appeals issues a writ of

*Department of Health and Mental Hygiene* is before us by way of petition for writ of

certiorari. Because both cases address common issues of law, we will address the following

questions, which we have rephrased in this consolidated opinion:[3]

> 1. Did the Circuit Court err in determining that the statutory scheme, set forth in Criminal Procedure Article §§ 3-114, et seq., for the granting and/or revocation of the conditional release of a committed person violates the separation of powers provision found in Article 8 of the Maryland Declaration of Rights and is thus void as unconstitutional?

> 2. Did the Circuit Court err in revoking Merchant's conditional release and ordering his continued commitment for institutional inpatient care and treatment after the ALJ had found that Merchant was eligible for conditional release and had recommended the same?

> 3. Did the Circuit Court err in refusing to consider the ALJ's report and

---

> certiorari, the filing of a record extract and briefs shall be governed by Rules 8-501 through 8-511 unless the Court orders otherwise.

[3] The certified questions from the Court of Special Appeals state:
> (1) Did the [C]ircuit [C]ourt err in determining that the statutory scheme, set forth in Crim. Proc. §§ 3-114, et seq., for the granting and/or revocation of the conditional release of a committed person violates the separation of powers provision found in Article 8 of the Maryland Declaration of Rights and is thus void as unconstitutional?
> (2) Did the [C]ircuit [C]ourt err in revoking Merchant's conditional release and ordering his continued commitment for institutional inpatient care and treatment after the ALJ had found that Merchant was eligible for conditional release and had recommended the same?

The questions presented in the petition for certiorari state:
> (1) Does the MD[.] Code Criminal Procedure Art. § 3-115 et. seq., interpreted by the Court of Special Appeals in *Byers v. State*, 184 Md. App. 499 (2009), violate the MD[.] Declaration of Rights Art. 8 and did the trial court err as a matter of law when it conducted a *de novo* hearing in violation of the statute?
> (2) Did the trial court err in refusing to consider the ALJ's report and recommendations and refusing to grant Petitioner's conditional release?

2

recommendations and refusing to grant Stoddard's conditional release?

We shall answer these questions in the affirmative and hold that under CP §§ 3-114, et seq.,

the substantial evidence standard applies to a circuit court's review of an ALJ's findings of

facts and recommendations.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Dennis Merchant

On April 4, 2000, Dennis Merchant ("Merchant") was indicted in the Circuit Court

for Prince George's County for attempted carjacking, attempted robbery, second degree

assault, attempted theft over $500, and possession of a controlled dangerous substance.

Merchant entered a plea of not criminally responsible by reason of insanity on April 24,

2000. The Circuit Court for Prince George's County found Merchant guilty of attempted

carjacking but not criminally responsible at the time of the commission of the offense and

committed him to the Department of Health and Mental Hygiene ("DHMH" or "Health

Department").[4] Between December 4, 2000 and August 19, 2014, the Circuit Court granted

Merchant conditional releases on various occasions but each conditional release was

subsequently revoked, resulting in Merchant's recommitment to DHMH for treatment.

Merchant's appeal arises out of the following events. The State filed a petition for

revocation of Merchant's conditional release on August 20, 2014[5] pursuant to CP §

---

[4] The State issued a *nolle prosequi* with regard to the remaining charges.

[5] The State's petition was based on information that Merchant allegedly violated the terms of his conditional release. Merchant allegedly went on unauthorized leaves of absence from

3

3-121(c).[6]  On the same day, a deputy sheriff apprehended Merchant pursuant to a hospital

warrant[7] issued by the Circuit Court in accordance with CP § 3-121(e) of the Criminal

Procedure Article.[8]   On February 26, 2015, ALJ D. Harrison Pratt for the Office of

Administrative Hearings ("OAH" or "the Office") held a hearing on the State's petition for

---

his community placement and did not seek voluntary psychiatric treatment when the staff
at his community placement requested that he do so.

[6] CP § 3-121(c) provides that:
> The petition for revocation or modification of a conditional release shall
> contain:
> (1) a statement that the committed person has violated a term of a conditional
> release and that there is therefore reason to believe that the committed person
> no longer meets the criteria for eligibility for conditional release;
> (2) a statement of the conditions violated;
> (3) the factual basis for the statements in items (1) and (2) of this subsection;
> (4) the most recent evaluation report on the committed person; and
> (5) the designation by the Health Department of the facility to receive the
> returned committed person.

[7] CP § 3-101(e) defines a hospital warrant as:
> [A] legal document issued by a court that: (1) authorizes any law enforcement
> officer in the State to apprehend a person who is alleged to have violated an
> order for conditional release and transport the person to a facility designated
> by the Health Department; and (2) requires that the issuance of the warrant is
> entered in the person's criminal history record information of the criminal
> justice information system.

[8] CP § 3-121(e) states in pertinent part that:
> If the court's review of the petition determines that there is probable cause to
> believe that the committed person has violated a conditional release, the court
> promptly shall:
> (1) issue a hospital warrant for the committed person and direct that on
> execution the committed person shall be transported to the facility designated
> by the Health Department . . . .

revocation at Springfield Hospital Center, where Merchant was committed.[9] In ALJ Pratt's Report on Revocation of Conditional Release Hearing ("Revocation Report"), he concluded that Merchant "sustained his burden of establishing eligibility for conditional release." ALJ Pratt based his conclusion on testimony presented at the hearing, which he summarized in his Revocation Report. He found by a preponderance of the evidence that:

> 1. On or about September 21, 2000, the [c]ourt committed [Merchant] to [DHMH] after a verdict of Not Criminally Responsible for the charge of attempted carjacking.
>
> 2. Subsequently [Merchant] was admitted to Springfield, a hospital under the control and jurisdiction of [DHMH].
>
> 3. On or about July 26, 2013, the [c]ourt granted [Merchant] a conditional release.
>
> 4. [Merchant] remained at Springfield until April 2014 when he was released to a residential placement, Arundel Lodge.
>
> 5. [Merchant] was released on conditions as ordered by the [c]ourt.
>
> 6. On August 19, 2014, the Arundel Lodge Program Manager notified the CFAP [Community Forensic Aftercare Program] that [Merchant] had violated the conditions of his release.
>
> 7. [Merchant] violated condition #1 of his release by going on four separate unauthorized leaves of absence from Arundel Lodge. He violated condition #5 by refusing to admit himself to Springfield after being told to do so by Arundel Lodge staff.
>
> 8. On August 19, 2014, after receiving correspondence from Arundel Lodge, the CFAP advised the State's Attorney of [Merchant's] violations. The State's Attorney then filed a Petition for Revocation of Conditional Release.

---

[9] The hearing required under CP § 3-121(g) was initially postponed. CP § 3-121(f) provides that "unless: (1) the hearing is postponed or waived by agreement of the parties; or (2) [OAH] postpones the hearing for good cause shown," the OAH shall hold a hearing "[w]ithin 10 days after the committed person is returned to [DHMH] in accordance with the hospital warrant."

The [c]ourt issued a Hospital Warrant, and [Merchant] was returned to Springfield on August 20, 2014. He has been a patient at Springfield since that time.

9. Upon his return to the hospital[,] his treating psychiatrist was Dr. Ngozi Nwanna.[10]

10. Initially [Merchant] was irritable with mild mania on his return to to Springfield. He informed Dr. Nwanna that he had convinced his outpatient psychiatrist to decrease his medication dosage. This caused [Merchant] to decompensate.

11. [Merchant] was diagnosed as having a bipolar condition with psychosis at the time of his readmission to Springfield.

12. The hospital increased the dosage of his medication, and he quickly stabilized. He is currently stable while taking the appropriate dosage of medicine. He is doing exceptionally well at the hospital, and he has been compliant with those medicines prescribed for his condition. He is employed at the hospital, regularly attends group therapy sessions and is one of the better patients. He is currently free of any symptoms of his mental illness, and he has good insight as to his mental illness as well as sound judgment. He has reached the maximum level of improvement.

13. Should [Merchant] be granted a conditional release he would again participate in the Arundel Lodge residential program, The staff from Arundel Lodge has agreed that he may rejoin their program. He would receive mental health treatment through Arundel Lodge, and the staff would monitor his medicines and activities.

14. Dr. Nwanna and the staff at Springfield are of the opinion that [Merchant] is not now, as the result of any mental illness, a danger to himself or the person or property of others as long as he abides by the proposed conditions of release.

At the hearing, Merchant also testified on his own behalf. As the Revocation Report

summarized, Merchant understood "that he has a mental illness and is committed to taking

---

[10] The Revocation Report noted that Dr. Ngozi Nwanna is an expert in psychiatry.

6

his prescribed medications at the dosages prescribed." Based on the evidence[11] and

testimony[12] presented at the hearing, ALJ Pratt concluded that the evidence demonstrates:

> [Merchant] has gained substantial insight into his mental illness and understands the critical connection between his mental health issues and his problems with the law. He has also exhibited insight into the incident that brought him to the Hospital. He has demonstrated significant improvement in his mental health. The evidence demonstrates that [Merchant] has cooperated fully with treatment in the Hospital, is compliant with his prescribed medication, and is committed to succeeding if he is released. [Merchant] also demonstrated a thorough knowledge of the rules for conditional release and expressed a sincere desire to comply with those conditions. He also exhibited insight into the role that his therapist would play in the community and expressed a willingness to return to the Hospital if it were to become necessary . . . . Accordingly, I conclude that [Merchant] has established that he would not be a danger to himself or to the person or property of others, as the result of a mental illness, if he were released subject to the proposed conditions.

ALJ Pratt recommended that Merchant be conditionally released from confinement for a

---

[11] The following joint exhibits were admitted into evidence:
1. Psychiatric Report by Dr. Ngozi Nwanna, treating psychiatrist, February 5, 2015.
2. Notice of Hearing.
3. Order of Revocation and Continued Commitment, July 18, 2008.
4. Order revoking conditional release, October 28, 2011.
5. Order granting conditional release, July 26, 2013.
6. Letter from Arundel Lodge, August 19, 2014.
7. Letter from the Community Forensic Aftercare Program ("CFAP") to Alana Gayle, Assistant State's Attorney for Prince George's County, August 19, 2014.
8. Petition for Revocation of Conditional Release.
9. Order for Hospital Warrant, August 19, 2014.
10. Hospital Warrant, August 19, 2014.

[12] At the hearing, Merchant testified on his own behalf. Krista Hrasar, LCSW-C, Forensic Coordinator and Dr. Ngozi Nwanna testified on behalf of DHMH.

period of five years.  Citing CP § 3-121(h), the Revocation Report also noted that "[w]ithin five (5) days after receipt of this report, the committed person or his attorney, the State's Attorney, or [DHMH] may file written exceptions to the determination made herein."[13]  No exceptions to the report were filed.  The Revocation Report was mailed to the Honorable Sean Wallace of the Circuit Court for Prince George's County for court action.  Copies of the exhibits ALJ Pratt admitted into evidence were also forwarded to Judge Wallace.

DHMH filed a "Motion to Hold a Hearing on the Record Made Before the Office of Administrative Hearings," which Merchant joined. In this motion, DHMH requested that Judge Wallace submit on the ALJ's findings and recommendations, and thereby adopt the Revocation Report and order Merchant's conditional release.  Counsel for Merchant filed a separate memorandum to address the issues of: (1) whether *Byers v. State*, 184 Md. App. 499, 966 A.2d 982 (2009) controlled Merchant's case, which arises under CP § 3-121, and (2) the implication of the separation of powers doctrine on Title 3 of CP.[14]  The motion and memorandum addressed a prior Opinion Judge Wallace issued on October 28, 2011 after a hearing on one of Merchant's earlier revocations of conditional release.  In the October 2011 opinion, Judge Wallace concluded that the ALJ procedure under Title 3 was unconstitutional

---

[13] CP § 3-121(h)(2) states: "Within 5 days after receipt of the report of the Office, the committed person, the State's Attorney, or the Health Department may file exceptions to the determination of the Office."

[14] The memorandum argued that *Byers* controlled Merchant's case and that the administrative provisions of Title 3 do not violate the separation of powers doctrine. We will address these arguments below as they are essentially the same issues presented to us on appeal.

8

and refused to apply the substantial evidence standard per the interpretation outlined in *Byers*.[15]

On May 8, 2015, Judge Wallace held a hearing on ALJ Pratt's recommendations. At this hearing, DHMH asked Judge Wallace to consider its motion and reconsider his October 28, 2011 opinion with regard to his conclusions about the separation of powers doctrine and the Court of Special Appeals interpretation of the law in *Byers*. Judge Wallace denied DHMH's motion. He stated, "I am going to also incorporate my prior written [October 28, 2011] opinion in this case and the analysis there . . . . my position is that you need to present evidence before me to determine whether or not the release of Mr. Merchant would be appropriate." After allowing the parties to present evidence, and hearing testimony from Dr. Ngozi Nwanna and Merchant, Judge Wallace issued an Opinion and Order on May 28, 2015. In this Opinion and Order, Judge Wallace noted that since January 3, 2001, Merchant "has violated the conditions of his release several times." Of those times, "the conditional release was revoked a few times [during] the other times he was continued on conditional

---

[15] In his October 28, 2011 opinion, Judge Wallace concluded that the ALJ release hearing under CP § 3-115, et. seq., violates the separation of powers doctrine. Based on this premise, he refused to defer to the ALJ's recommendation of conditional release and revoked Merchant's conditional release. Merchant was granted leave to appeal this decision to the Court of Special Appeals. The Court of Special Appeals initially granted the application but later dismissed the appeal on its own motion because "a brief or record extract was not filed by the appellant within the time prescribed by Rule 8-502." Md. Rule 8-602(a)(7).

9

release."[16]  Judge Wallace discussed the interpretation of the statutory scheme explained in

*Byers*[17] and the separation of powers doctrine of Article 8 of the Maryland Declaration of

Rights.  He then concluded that "the ALJ in a release hearing is performing a judicial

function" in violation of the separation of powers doctrine.  Judge Wallace rejected the

substantial evidence standard discussed in *Byers*, stating that while "[a] review of the ALJ's

record reveals that there was sufficient evidence to support his recommendation that the

defendant be conditionally released again . . . . The statute that requires the court to defer to

[the ALJ's] recommendation is unconstitutional and thus I do not defer to it."  He further

concluded that he was "unpersuaded by [DHMH's] psychiatrist and the other incomplete

[16] Judge Wallace recounted some of Merchant's prior violations of conditional release:

> On August 17, 2010, defendant threw a large rock through the window of an
> occupied car, sending glass shards into the car and injuring the two occupants
> . . . . Six days later on September 13, 2010, deputies with the Calvert County
> Sheriff's Office came into contact with defendant . . . . [when] [d]efendant []
> approached a group of children waiting for a school bus and started yelling[,]
> "My [n***as] is coming for y'all."  He was arrested for disorderly conduct
> and while being transported to the Calvert County jail, the defendant stated
> numerous times that he would "get a gun and take care of [s**t] around here."

Judge Wallace also elaborated on the events leading up to the most recent petition for
revocation of conditional release.  He noted that Merchant made four unauthorized leaves
of absence, one of them leading to "a citizen call to the police regarding 'some disturbing
behavior at a 7-11.'"  He stated that Merchant was also suffering from "hypersexual
ideation, grandiose delusions and verbalized aggression to his therapist."

[17] In his October 28, 2011 Opinion, Judge Wallace concurred with the parties that the case
was controlled by *Byers* but concluded that the Court of Special Appeals interpretation of
the law in that case "raises constitutional problems."  Because he found the interpretation
in *Byers* to be unconstitutional, he refused to defer to it.

10

evidence, that defendant has shown he would not be a danger if released with the recommended conditions" and revoked Merchant's conditional release.

On November 6, 2015, the Court of Special Appeals granted Merchant's Application for Leave to Appeal. On November 9, 2015, the Court of Special Appeals certified Merchant's appeal to this Court to answer two certified questions.

## B. Marshall Stoddard

On May 21, 1010, Marshall Stoddard ("Stoddard") was indicted in the Circuit Court for Prince George's County for first and second-degree attempted sexual offense, first and second-degree attempted rape; first and second-degree assault; and false imprisonment.[18] Stoddard entered a plea of not criminally responsible by reason of insanity on October 5, 2010. On January 7, 2011, Judge Wallace found Stoddard guilty of attempted second-degree sexual offense.[19] He also found Stoddard not criminally responsible at the time of the commission of the offense. The court committed Stoddard to DHMH. On February 24, 2011, an administrative hearing was held to determine Stoddard's eligibility for release from

---

[18] The record indicates that on or about April 12, 2010, Stoddard cut his 81-year-old grandmother on the face and hands with a butcher knife and then poured salt in her wounds. He also attempted to force his grandmother to engage in sexual intercourse. Stoddard had been released from a psychiatric hospitalization a week earlier. At the time of the assault, Stoddard was not in compliance with his prescription medications and was also using PCP, "mushrooms," and alcohol. In Stoddard's account of the incident, he reported that he had a psychotic episode and believed his grandmother was a succubus.

[19] The State issued a *nolle prosequi* with regard to the remaining charges.

11

commitment pursuant to CP § 3-115.[20] Stoddard appeared at the hearing, waived his right to an evidentiary hearing, and agreed to remain committed to DHMH. Subsequently, Judge Wallace issued an Order of Continued Commitment on March 23, 2011.

On December 27, 2013, Stoddard filed an application for release pursuant to CP § 3-119(b).[21] In a letter dated December 30, 2013, the staff at Thomas B. Finan Center ("Finan Center") where Stoddard was committed recommended that he be placed on conditional release for a period of five years. On January 10, 2014, ALJ Michael J. Wallace held a hearing on the application for release at the Finan Center. In ALJ Wallace's "Report on Release Eligibility" ("Release Report"), he found that Stoddard had sustained his burden of proof for conditional release. CP § 3-114(d) provides that "a committed person has the burden to establish by a preponderance of the evidence eligibility for discharge or eligibility

---

[20] CP § 3-115 provides in pertinent part:
> (a) *When required.* Within 50 days after commitment to the Health Department under § 3-112 of this title, a hearing officer of the Health Department shall hold a hearing to consider any relevant information that will enable the hearing officer to make recommendations to the court as to whether the committed person is eligible for release under § 3-114 of this title.
> (b) *Postponement or waiver.* (1) The release hearing may be postponed for good cause or by agreement of the committed person and the Health Department.
> (2) The committed person may waive the release hearing.

[21] CP § 3-119(b) provides in pertinent part:
> (1) To apply for release under this subsection, the committed person shall file an application for release with the Health Department and notify the court and State's Attorney, in writing, of this request.
> (2) The provisions of this title governing administrative hearing and judicial determination of eligibility for release apply to any application for release under this subsection.

12

for conditional release."[22] ALJ Wallace found by a preponderance of the evidence that:

1. On January 7, 2011, after a verdict of NCR [not criminally responsible] to second degree attempted sexual offense, the [c]ourt committed [Stoddard] to [DHMH] for inpatient care and treatment.

2. [Stoddard] was initially placed at [Clifton T.] Perkins [Hospital Center], and then transferred to the [Finan] Hospital on September 24, 2012, where he remains today.

3. Since his admission, [Stoddard] has been able to maintain the highest level of privileges available to him, which includes being off the locked nursing unit for an hour at a time unescorted and community visits with staff supervision. These community visits have been without incident. [Stoddard] has only lost privileges at times due to violations of the hospital smoking policy.

4. [Stoddard] was required to register as a Tier I sex offender and complied with this after admission. He has also been compliant with subsequent re-registrations.

5. [Stoddard] has been assigned to a number of groups, including The Courage to Change, Stress Management, Leisure Skill Development, Leisure Awareness, Health Club, Volunteer, Community Leisure Skills, Values, Community Meeting, Release Readiness, Smoking Recovery, Community Leisure Skills, and individual therapy groups. In addition, he regularly attends

---

[22] CP § 3-114 governs a committed person's eligibility for release or discharge:
    (a) *In general.* A committed person may be released under the provisions of this section and §§ 3-115 through 3-122 of this title.
    (b) *Discharge.* A committed person is eligible for discharge from commitment only if that person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if discharged.
    (c) *Conditional release.* A committed person is eligible for conditional release from commitment only if that person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if released from confinement with conditions imposed by the court.
    (d) *Burden of proof.* To be released, a committed person has the burden to establish by a preponderance of the evidence eligibility for discharge or eligibility for conditional release.

13

[Finan] Hospital's NA/AA Meetings.

6. [Stoddard] continues to be medication compliant and will ask questions about his medication as he takes them. [Stoddard] also consistently verbalizes his need for medications. No delusions or hallucinations have been noted and when he was asked about his medications, he stated, "I wish I had these medications 20 years ago."

7. [Stoddard] has mental disorders diagnosed as Schizoaffective Disorder and History of Polysubstance Abuse on Axis I.

8. [Stoddard] has been an active participant in treatment since his admission to the [Finan] Hospital. He has been compliant with all aspects of treatment and has been willing to discuss the crime that resulted in the finding of NCR and how his illness impacted his ability to confirm his behaviors to the requirements of the law. [Stoddard] verbalizes acceptance of his responsibility that in order to prevent future incidents, he needs to remain compliant with his medications, maintain close working relationships with his treatment providers and avoid the stressors that resulted in his decompensation and subsequent crimes.

9. [Stoddard] is currently prescribed the following psychiatric medications:
    Prolixin 5mg twice daily for Schizoaffective Disorder
    Lamictal 150mg daily for mood stabilization
    Cogentin 2mg at bedtime for prevention of extra-pyramidal symptoms
    Oxcarbazepine 600mg in the morning and 600 mg at bedtime for mood stabilization
    Gabapetin 600mg three times daily for mood stabilization
    Geodon 160mg daily for mood disorder
    Trazodone 100mg at bedtime for insomnia

10. [Stoddard] is currently stable and compliant with medication, attends various groups and is active in discussing and preparing for his discharge. [Stoddard] has not been a behavioral problem and has not exhibited any assaultive behavior since being adjudicated NCR.

Based on the evidence[23] and the testimony[24] presented at the hearing, ALJ Wallace

---

[23] The following joint exhibits were admitted into evidence by ALJ Wallace:
    1. Notice of Hearing.
    2. Letter from Kelly A. Clark, Assistant Public Defender, to Judy Hott, CEO, Thomas B. Finan Center, December 27, 2013.

concluded that the evidence was "persuasive that [Stoddard] would not be a danger to himself or others if released subject to the proposed conditions" and recommended that Stoddard be conditionally released for five years. Citing CP § 3-116(d), the Release Report noted that "[w]ithin ten (10) days after receipt of this report, the committed person or his attorney, the State's Attorney, or [DHMH] may file written exceptions to the determination made herein."[25] No exceptions to the report were filed. The Release Report and copies of the exhibits ALJ Wallace admitted into evidence were forwarded to Judge Wallace.

On April 4, 2014, Judge Wallace held a hearing on Stoddard's conditional release. As in Merchant's case, DHMH filed a "Motion to Hold a Hearing on the Record Made Before the Office of Administrative Hearings." Judge Wallace denied the motion,

---

3. Order of Continued Commitment, March 23, 2011
4. Commitment to the Department of Health and Mental Hygiene After a Verdict of Not Criminally Responsible, January 7, 2011.
5. Order of Court, October 20, 2010.
6. Commitment to the Department of Health and Mental Hygiene for Examination and Report as to Defendant's Criminal Responsibility at the Time of the Commission of the Alleged Offense and Competency to Stand Trial, October 8, 2010.
7. Findings, Conclusions, and Order of Conditional Release, undated.
8. Psychiatric Report by Janet L. Hendershot, Ph.D., and Taiwo Okusami, M.D., December 30, 2013.

[24] Taiwo Okusami, M.D., who is an expert in general psychiatry and Janet L. Hendershot, Ph.D., Stoddard's psychologist, testified on behalf of DHMH. Stoddard testified on his own behalf.

[25] CP § 3-116(d) states: "The committed person, the State's Attorney, or the Health Department may file exceptions to the report of the Office within 10 days after receiving the report."

15

explaining that he finds the statute to be unconstitutional for violating the separation of powers doctrine "for the reasons that I've stated previously in writing in State versus Merchant." Counsel for DHMH and Stoddard objected to the admission of any testimony at the hearing, which Judge Wallace overruled, stating, "I'm going to allow [Stoddard] to present evidence that he thinks might justify my authorizing such a release." He further stated that "I'm not going to consider the administrative law judge's thing [Release Report], but there is a copy of it in the file for the record." He then proceeded to hear testimony from Dr. Okusami, Stoddard's treating psychiatrist, a social worker who has worked with Stoddard during his time at Finan, and Stoddard himself. At the conclusion of the hearing, Judge Wallace declared that "it certainly seems [Stoddard has] made progress, but I'm not persuaded at this time -- and I'm going to deny the request for conditional release."

The Court of Special Appeals granted Stoddard's application for leave to appeal on June 29, 2015. Prior to any proceedings in the Court of Special Appeals, Stoddard filed a petition for writ of certiorari in this Court, which we granted.[26] *Stoddard v. Dept. of Health and Mental Hygiene*, 445 Md. 487, 128 A.3d 51 (2015).

---

[26] In his brief, Stoddard notes that on April 24, 2015, OAH held a hearing on a new petition for release filed by Stoddard but that the results of this hearing are unclear. In a footnote, Stoddard explains that his counsel was filing a motion to supplement the record to determine whether his appeal was moot. Apparently, no such motion was filed. Regardless of whether Stoddard's case is moot, the facts of his case present "a recurring matter of public concern which, unless decided, will continue to evade review." *La Valle v. La Valle*, 432 Md. 343, 352, 69 A.3d 1, 7 (2013) (citations omitted). Thus, we will consider his case on the merits.

16

**STANDARD OF REVIEW**

"The interpretation of a statute is a question of law, which we consider *de novo*."

*Harrison-Solomon v. State*, 442 Md. 254, 265, 112 A.3d 408, 415 (2015). To determine the

General Assembly's intent under the statutory scheme of CP, Title 3, we apply the rules of

statutory construction, which this Court has summarized in numerous cases:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.
>
> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope. Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to

other laws, its general purpose and relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*Gardner v. State*, 420 Md. 1, 8–9, 20 A.3d 801, 806 (2011) (citing *State v. Johnson*, 415 Md. 413, 421–22, 2 A.3d 368, 373 (2010)).

## DISCUSSION

The procedure under Maryland law for dealing with those not criminally responsible was changed in 1984 with the inception of Senate Bill 645 which resulted in the enactment of 1984 Md. Laws, Chap. 501. The purpose of Senate Bill 645 was to "revise, restate, and recodify the laws relating to incompetency and criminal responsibility in criminal cases." Senate Judicial Proceedings Committee, Summary of Committee Report, S.B. 645 at 3 (Md. 1984) (hereinafter Summary of Committee Report ). The Summary of Committee Report further provided that "[t]he purpose of the bill is to implement the recommendations of the Task Force[27] in an effort to streamline and strengthen, where necessary, the procedures for the defense of not criminally 'responsible' in Maryland." *Id.* Senate Bill 645 was originally codified in Md. Code (1982, 1989 Cum. Supp.), § 12-101 et.seq., of the Health-General Article ("HG") and later recodified as Title 3 of CP.

In both cases before us, the Circuit Court concluded that the statutory scheme set

---

[27] In 1982, Governor Hughes appointed the "Task Force to Review the Defense of Insanity" to examine the insanity defense in Maryland. Chapter 501 of the Acts of 1984 was enacted pursuant to the report and recommendations of the Task Force.

18

forth in CP §§ 3-114, et. seq., for the granting and/or revoking of the conditional release of a committed person is unconstitutional. All parties contend that this conclusion was in error. It is well documented that State statutes enjoy "a strong presumption of constitutionality." *Burruss v. Bd. of Cty. Commissioners of Frederick Cty.*, 427 Md. 231, 263, 46 A.3d 1182, 1201 (2012). Furthermore, "[w]e do not presume that the Legislature intended to enact unconstitutional legislation and, if it did so intend, we would limit a statute to only those situations in which it would pass constitutional muster." *Harrison-Solomon*, 442 Md. at 287, 112 A.3d at 428. While the Honorable Charles E. Moylan, Jr. did not specifically address the constitutionality of Title 3 in *Byers*, his analysis properly proceeded on the presumption that Title 3 is constitutional. We begin our discussion on the same premise.

### The Separation of Powers Doctrine

In Maryland, the separation of powers doctrine is embodied in Article 8 of the Maryland Declaration of Rights.[28] We recently stated that this "doctrine does not, however, rigidly establish strict lines of demarcation between the three branches of government." *Meyer v. State*, 445 Md. 648, 672, 128 A.3d 147, 161 (2015). We have repeatedly recognized the concept of constitutional elasticity. *See Meyer*, 445 Md. at 673, 128 A.3d at 162 ("In Maryland, we have applied this 'sensible degree of elasticity' when alleged violations of the separation of powers doctrine occurred."); *McCulloch v. Glendening*, 347

---

[28] "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other." Md. Decl. of Rts. art. 8.

Md. 272, 284, 701 A.2d 99, 105 (1997) ("Thus, the separation of powers doctrine does not require absolute separation between the branches of government."); *Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 220, 334 A.2d 514, 521 (1975) ("We believe this to be permissible, within limits, as the separation of powers concept may constitutionally encompass a sensible degree of elasticity and should not be applied with doctrinaire rigor.").
In *Linchester Sand & Gravel Corp.*, we specifically discussed the separation of powers doctrine as it pertains to administrative agencies:

> In response to the practical needs of government, not only has there been an extensive introduction of these administrative agencies in this State, as is true in most if not all of our sister states, but in addition, as a consequence of this need, there has occurred within these agencies some mingling, blending and overlapping of the legislative, executive and judicial functions. We believe this to be permissible, within limits, as the separation of powers concept may constitutionally encompass a sensible degree of elasticity and should not be applied with doctrinaire rigor.

274 Md. at 220, 334 A.2d at 521. The concept of constitutional elasticity is not, however, without limits. "[C]onstitutional 'elasticity' cannot be stretched to a point where, in effect, there no longer exists a separation of governmental power, as the Maryland Constitution does not permit a merger of the three branches of our State government, nor does it 'make any one of the three departments subordinate to the other, when exercising the trust committed to it.'" *Id.* (citation omitted).

The appellants, Merchant and Stoddard, argue that the interpretation of the statutory scheme in *Byers* was correct, applicable to their cases, and the Circuit Court erred by declining to apply this precedent. Pursuant to *Byers*, there was substantial evidence to

20

support the ALJ's recommendation to release Merchant and Stoddard, respectively. Therefore, Merchant and Stoddard ask that we reverse the judgment of the Circuit Court and direct the Circuit Court to approve the ALJ's recommendations in their respective cases.

In contrast, Appellees DHMH and the Criminal Appeals Division of the Office of the Attorney General ("the Criminal Appeals Division") argue that the intermediate appellate court was mistaken in *Byers* when it concluded the statutory scheme of Title 3 imposed a substantial evidence review requirement on the Circuit Court. They claim that the *Byers* interpretation violates the separation of powers doctrine because requiring the court to review the ALJ decision for substantial evidence results in an impermissible delegation of judicial authority to the executive branch. Both appellees suggest alternative interpretations of the statutory scheme of Title 3.

DHMH contends that the proper role of the Circuit Court is to rely on the record developed in the OAH and accord deference to the purely factual findings of the ALJ but to make its own conclusion on the merits of the case. It analogizes the role of the ALJ under Title 3 to that of the use of masters, now magistrates. Citing *In re Marcus J.*, 405 Md. 221, 950 A.2d 787 (2008), DHMH explains that courts may delegate the process of fact finding and the making of recommendations to a magistrate, but a magistrate may not exercise the judicial authority of rendering ultimate determinations. Based on its interpretation of the statutory scheme, DHMH asserts that the Circuit Court erred in both Merchant's and Stoddard's cases because the uncontroverted evidence before the Circuit Court was that

21

Merchant and Stoddard, respectively, would not be a danger to himself or others. Meanwhile, the Criminal Appeals Division espouses the view that the court has the inherent authority to hold a supplemental evidentiary hearing. Based on its interpretation of the law, the Criminal Appeals Division concludes that the Circuit Court did not err when it refused to grant Merchant and Stoddard a conditional release. In Merchant's case, the Criminal Appeals Division states that Merchant's long history of violations of conditional release properly rebutted the testimony of his treating psychiatrists. In Stoddard's case, the Division states that based on the exceptional violence of Stoddard's crime, the court properly found that Stoddard did not meet his burden of proving by a preponderance of the evidence that he would not be a danger to himself or others if conditionally released. We address the interpretations proposed by DHMH and the Criminal Appeals Division below and conclude that the interpretation of Title 3 in *Byers* is more persuasive and does not violate the separation of powers doctrine.

In *Byers*, the Judge Moylan performed a detailed examination of CP, Title 3. He described the statutory scheme as calling "for release or discharge to be a hybrid determination engaging both the executive branch and the judicial branch in the decisional process." *Byers*, 184 Md. App. at 505, 966 A.2d at 986. DHMH and OAH "act on behalf of the executive branch" while "[t]he circuit court acts for the judicial branch." *Id.* The statutory scheme here prescribes mandatory judicial review. Generally, an "administrative decision takes effect and is a final resolution of the problem" if no petition for judicial

22

review is taken. *Byers*, 184 Md. App. at 511–12, 966 A.2d at 990. Title 3 presents a situation where the administrative decision is not "self-executing," rather, "[a] judge must 'sign off' on the release or discharge." *Byers*, 184 Md. App. at 511, 966 A.2d at 990. This occurs because a person found not criminally responsible is "committed" by the circuit court, so only the circuit court may "uncommit" the person. *Id.* Judge Moylan concluded that "the basic release or discharge determination is intended to be an administrative decision to be made within the executive branch of government, subject only to judicial monitoring of its procedural propriety, and is not intended to be something that segues into an actual judicial determination on the ultimate merits." *Byers*, 184 Md. App. at 514, 966 A.2d at 991. Therefore, the role of the circuit court is to determine whether the evidence "was substantial enough to support the conclusions and the recommendation of the ALJ." *Byers*, 184 Md. App. at 532, 966 A.2d at 1002.

Judge Moylan's interpretation of the statutory scheme in *Byers* does not violate the separation of powers doctrine. Generally, judicial review of an administrative hearing is a creature of statute rather than a constitutional or common law right. *Parlato v. State Comm'n on Human Relations*, 76 Md. App. 695, 698, 548 A.2d 144, 145–46 (1988) *cert. denied*, 314 Md. 497, 551 A.2d 867 (1989); *see also Criminal Injuries Compensation Board v. Gould*, 273 Md. 486, 500, 331 A.2d 55 (1975). We also note that the circuit courts "have an inherent power to review administrative agency decisions." *Anne Arundel Cty. v. Halle Dev., Inc.*, 408 Md. 539, 556, 971 A.2d 214, 224 (2009). The circuit court's power "in

23

reviewing an administrative agency adjudicatory decision is narrow[.] [I]t is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Cosby v. Dep't of Human Res.*, 425 Md. 629, 638, 42 A.3d 596, 601 (2012) (citing *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999)). CP § 3-116 provides:

(a) *In general*. Within 10 days after the hearing ends, the Office shall prepare a report of recommendations to the court that contains:
(1) a summary of the evidence presented at the hearing;
(2) recommendations of the Office as to whether the committed person proved, by a preponderance of the evidence, eligibility for conditional release or eligibility for discharge; and
(3) if the Office determines that the committed person proved eligibility for conditional release, the recommended conditions of the release in accordance with subsection (b) of this section.

(b) *Consideration of conditions for release*. In recommending the conditions of a conditional release, the Office shall give consideration to any specific conditions recommended by the facility of the Health Department that has charge of the committed person, the committed person, or counsel for the committed person.

(c) *Copies of report*. The Office shall send copies of the report of recommendations:
(1) to the committed person;
(2) to counsel for the committed person;
(3) to the State's Attorney;
(4) to the court; and
(5) to the facility of the Health Department that has charge of the committed person.

(d) *Exceptions*. The committed person, the State's Attorney, or the Health Department may file exceptions to the report of the Office within 10 days after receiving the report.

CP § 3-117 provides:

> (a) *In general.* Within 30 days after the court receives the report of recommendations from the Office:
> (1) the court on its own initiative may hold a hearing; or
> (2) if timely exceptions are filed, or if the court requires more information, the court shall hold a hearing unless the committed person and the State's Attorney waive the hearing.
>
> (b) *Conduct of hearing.* (1) The court shall hold the hearing on the record that was made before the Office.
> (2) At the judicial hearing, the committed person is entitled to be present and to be represented by counsel.
> (3) The court may continue its hearing and remand for the Office to take additional evidence.

Pursuant to CP § 3-116, no conclusive action in a case is taken until the circuit court acts.

As Judge Moylan explained, the language of CP § 3-117(b)(1) "mandates that the court hearing shall be 'on the record that was made before the Office'" and "[m]ost significantly, subsection [CP § 3-117](b)(3) then goes on to prescribe the steps that need to be taken in case further evidence should be needed." *Byers*, 184 Md. App. at 514, 966 A.2d at 991. Specifically, the circuit court must remand to OAH for the taking of additional evidence. What is unique about the statutory power of judicial review described here is that it is mandatory. This does not render the procedure unconstitutional, rather, given the unique judiciary-executive branch hybrid at play, it avoids the separation of powers problem that would otherwise arise. An individual who has committed a crime but is found not criminally responsible is not sanctioned, instead, the remedy is treatment under the aegis of DHMH. *Harrison-Solomon*, 442 Md. at 286–87, 112 A.3d at 428. As Judge Moylan noted, it is,

however, the circuit court that commits the individual, therefore, only the circuit court may release, conditionally or otherwise, the individual. To allow an ALJ's findings and recommendations to go into effect automatically under the judiciary-executive hybrid created under Title 3 would beget the impermissible situation where the judicial branch is made subordinate to the executive branch, stretching the concept of constitutional elasticity "to a point where, in effect, there no longer exists a separation of governmental power." *Linchester Sand & Gravel Corp.*, 274 Md. at 220, 334 A.2d at 521. As explained above, the substantial evidence standard of review put forth by Judge Moylan is the commonly accepted standard for court review of administrative decisions and does not, as the appellees contend, impermissibly delegate judicial authority to the executive branch.

To give a circuit court the authority to make its own decision on the merits of the case as suggested by DHMH or hold its own *de novo* hearing as proposed by the Criminal Appeals Division would yield a result that violates the separation of powers doctrine. *See Linchester Sand & Gravel Corp.*, 274 Md. at 229, 334 A.2d at 525–26 (striking down the subparagraph of the statute which "in substance provides for a de novo trial free of the Administrative Procedure Act."). The DHMH's analogy overlooks a significant distinguishing feature between the role of a juvenile magistrate and the role of an ALJ. Magistrates are arms of the judiciary whereas ALJs perform executive functions. Article IV, § 9, of our State Constitution authorizes the circuit courts "to appoint masters as officers of the court," giving a magistrate a ministerial role. *Harryman v. State*, 359 Md. 492, 505,

26

754 A.2d 1018, 1025 (2000); *see also In re Marcus J.*, 405 Md. at 235, 950 A.2d at 795.

Because a magistrate functions as part of the judiciary, there is no separation of powers issue when the circuit court makes its own decision on the merits of the case or holds a *de novo* hearing—all actions occur within the judiciary branch. To apply this procedure to the role of the ALJ under Title 3, however, creates a separation of powers problem because it would allow a circuit court, exercising judicial authority, to essentially "assume or discharge the duties of" an ALJ's exercise of executive power. Md. Decl. of Rts. art. 8. Therefore, we agree with Judge Moylan that pursuant to Title 3, the General Assembly, consistent with the separation of powers doctrine, intended for a circuit court judge to apply the substantial evidence standard to its review of an ALJ's findings of facts and recommendation.

## The Statutory Scheme

All parties point to CP § 3-118 as the source of ambiguity in the statutory scheme. CP § 3-118 describes the action to be taken by a court upon receiving a report from OAH, providing in pertinent part:

> (a) *In General.* Within 15 days after a judicial hearing ends or is waived, the court shall determine whether the evidence indicates that the committed person proved by a preponderance of the evidence eligibility for release, with or without conditions, in accordance with § 3-114 of this title, and enter an appropriate order containing a concise statement of the findings of the court, the reasons for those findings, and ordering:
> > (1) continued commitment;
> > (2) conditional release; or
> > (3) discharge from commitment.
>
> (b) *Order without hearing.* (1) If timely exceptions are not filed, and, on review of the report of recommendations from the Office, the court determines

27

that the recommendations are supported by the evidence and a judicial hearing is not necessary, the court shall enter an order in accordance with the recommendations within 30 days after receiving the report from the Office. (2) A court may not enter an order that is not in accordance with the recommendations from the Office unless the court holds a hearing or the hearing is waived.

\*\*\*

(e) *Appeals*. (1) An appeal from a District Court order shall be on the record in the circuit court.
(2) An appeal from a circuit court order shall be by application for leave to appeal to the Court of Special Appeals.

Judge Moylan also acknowledged that it is ambiguous whether CP § 3-118(a) requires the court to be persuaded of eligibility for release "by a preponderance of the evidence," or requires the court to determine whether there was substantial evidence for the ALJ to have been persuaded "by a preponderance of the evidence." *Byers*, 184 Md. App. at 517, 966 A.2d at 993. The Criminal Appeals Division contends that the language of CP § 3-118(b) does not alter the interpretation of CP § 3-118(a). Instead, the Criminal Appeals Division argues that the plain language of CP 3-118(a) "allows the court to make its own determinations" and gives the court discretion "to hold a hearing under any circumstances." The Criminal Appeals Division's contention ignores the fact that "[t]he meaning of the plainest language is controlled by the context in which it appears." *Md.-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 182, 909 A.2d 694, 700 (2006) (internal quotation marks omitted) (citing *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996)). As Judge Moylan recognized in *Byers,* an isolated reading of CP § 3-118(a),

28

"would seem to indicate that it is the judge who must be personally persuaded that release

or discharge is called for rather than an indication that the judge must only be satisfied, as

a matter of law, that the evidence was sufficient for the ALJ to have been so persuaded."

*Byers*, 184 Md. App. at 517, 966 A.2d at 993. The language of subsections (b) and (e),

however, seems to indicate otherwise:

> Subsection (b)(1) deals with the situation in which no exceptions have been
> filed to the recommendations of the ALJ and the Board. In such a case, the
> court does not take evidence or presume to engage in fact-finding of its own.
> It simply reviews the report from the Office [of Administrative Hearings] to
> see if the ALJ's "*recommendations are supported by the evidence*" (emphasis
> supplied), and, if so, the court "shall enter an order in accordance with the
> recommendations." This is the classic language of administrative appeals.
> The court, in a quasi-appellate capacity, monitors the action that has been
> taken by the ALJ and determines whether the recommendations are supported
> by substantial evidence. It does not presume to second-guess the
> recommendations on their merits.
>
> Subsection (b)(2) goes on to provide that if the circuit court judge is not going
> to follow the recommendations of the ALJ, the court must hold a hearing
> unless the hearing is waived. This seems to be nothing but the affording of
> an opportunity to the lawyers to argue the case.

*Byers*, 184 Md. App. at 518–19, 966 A.2d at 994. Furthermore, CP § 3-118(e)(2) provides

that "[a]n appeal from a circuit court order shall be by application for leave to appeal to the

Court of Special Appeals" rather than of right to the Court of Special Appeals. Judge

Moylan explained that because the statute does not provide for an automatic right to an

appeal to the intermediate appellate court, this is "a further indication that [the Court of

Special Appeals] would not in such a case be reviewing a *de novo* decision of the circuit

court but would only be entertaining an administrative appeal that had already enjoyed one

level of judicial review." *Byers*, 184 Md. App. at 519, 966 A.2d at 994.

Judge Moylan also discussed, in *Byers,* CP § 3-119, which delineates how a committed person may apply for release:

(a) *In general*. (1) Not earlier than 1 year after the initial release hearing ends or was waived, and not more than once a year thereafter, a committed person may apply for release under either subsection (b) or (c) of this section, but not both.
(2) Notwithstanding the time restrictions in paragraph (1) of this subsection, a committed person may file an application for release at any time if the application is accompanied by an affidavit of a physician or licensed psychologist that states an improvement in the mental condition of the committed person since the last hearing.

(b) *Administrative Procedure*. (1) To apply for release under this subsection, the committed person shall file an application for release with the Health Department and notify the court and State's Attorney, in writing, of this request.
(2) The provisions of this title governing administrative hearing and judicial determination of eligibility for release apply to any application for release under this subsection.

(c) *Court procedure*. (1) To apply for release under this subsection, the committed person shall file a petition for release with the court that ordered commitment.
(2) The committed person shall send a copy of the petition for release to the Health Department and the State's Attorney.
(3) If the committed person requests a trial by jury, the trial shall be held in a circuit court with a jury as in a civil action at law.
(4) The trier of fact shall:
    (i) determine whether the committed person has proved eligibility for release by a preponderance of the evidence; and
    (ii) render a verdict for:
        1. continued commitment;
        2. conditional release; or
        3. discharge from commitment.
(5) If the trier of fact renders a verdict for conditional release, within 30 days after the verdict, the court shall release the committed person under conditions

it imposes in accordance with specific recommendations for conditions under § 3-116(b) of this title.

(d) *Appeals*. (1) An appeal from a District Court order shall be on the record in the circuit court.
(2) An appeal from a circuit court order shall be by application for leave to appeal to the Court of Special Appeals.

The Criminal Appeals Division asserts that the presence of two different methods for obtaining court review does not divest a circuit court of its authority to make its own decision on the merits of the case, regardless of which avenue of release the committed person selects. This contention cannot stand because it would render the language of CP § 3-119(a) "superfluous[] or nugatory." *Bd. of Educ. of Howard Cty. v. Howard Cty. Educ. Ass'n-ESP, Inc.*, 445 Md. 515, 533, 128 A.3d 68, 79 (2015). CP § 3-119 explicitly provides two modalities for a committed individual's subsequent applications for release, an "Administrative procedure" under CP § 3-119(b) and a "Court procedure" under CP § 3-119(c). As Judge Moylan emphasized, "[s]ubsection (a) further provides that 'a committed person may apply for release under *either subsection (b) or (c)* of this section, *but not both*.'" *Byers*, 184 Md. App. at 505–06, 966 A.2d at 986 (emphasis in original). A committed person opts for the "Administrative procedure" by filing an application for release with DHMH pursuant to CP § 3-119(b)(1). A hearing before an ALJ follows.[29] A committed

---

[29] CP § 3-119(b)(2) states: "The provisions of this title governing administrative hearing and judicial determination of eligibility for release apply to any application for release under this subsection."

person also has the option to file his or her petition for release directly with the circuit court under the "Court procedure" of CP § 3-119(c). When a committed person selects the "Court procedure" there is no prior administrative activity; the committed person selects a trial by jury or a bench trial. If the committed person selects a bench trial, the trial judge serves as the fact-finder, and determines whether the person has proved eligibility for release by a preponderance of the evidence and renders a verdict. If the committed person opts for the "Administrative procedure," the circuit court has no role until it receives a report from the ALJ. For a circuit court to hold its own evidentiary hearing when it is clear that the committed person selected the administrative route merges the two modalities of review which is inconsistent with the clear mandate of CP § 3-119(a).

In addition, as previously discussed, the General Assembly intended to create a statute to "streamline and strengthen . . . the procedures for the defense of not criminally 'responsible' in Maryland." Summary of Committee Report at 3. For a court to hold its own evidentiary hearing on the merits of the case when the committed individual selected the administrative procedure available under CP § 3-119(b)(1), as Stoddard did, would be repetitive because much of the testimony that would be presented is the same as that which was presented before the ALJ. This certainly would not be a streamlined procedure.

We also note that even where the committed person selects the "Court procedure," CP § 3-119(c)(5) provides that "[i]f the trier of fact renders a verdict for conditional release

. . . the court shall release the committed person under conditions it imposes in accordance with specific recommendations for conditions under [CP] § 3-116(b)." These "specific recommendations for conditions under [CP] § 3-116(b)" are the conditions of release recommended by an ALJ. CP § 3-116(b) provides: "In recommending the conditions of a conditional release, the Office shall give consideration to any specific conditions recommended by the facility of [DHMH] that has charge of the committed person, the committed person, or counsel for the committed person." It is apparent that the statutory provisions require a circuit court to defer to OAH's recommendations as to the conditions of release even where a committed person initiates the "Court procedure" in a circuit court. This is an indication that under the statutory scheme, generally, the General Assembly did not intend for the court to have anything more than the power of judicial review. The language found elsewhere in Title 3 providing the court with the power of judicial review reinforces this conclusion. *See* discussion of CP § 3-117 *supra*.

CP § 3-121, under which Merchant's case arises, also provides valuable insight into the statutory scheme. This section provides the procedure to be followed when a committed person has allegedly violated conditions of conditional release. CP § 3-121 describes in pertinent part:

> (f) *Revocation hearing required*. Within 10 days after the committed person is returned to the Health Department in accordance with the hospital warrant, the Office shall hold a hearing unless:
> (1) the hearing is postponed or waived by agreement of the parties; or
> (2) the Office postpones the hearing for good cause shown.

(g) *Hearing procedures.* At the hearing on revocation or modification: (1) the committed person is entitled to be represented by counsel including, if the committed person is indigent, the Public Defender or designee of the Public Defender;

(2) the committed person, Health Department, and State's Attorney are entitled to offer evidence, to cross-examine adverse witnesses, and to exercise any other rights that the Office considers necessary for a fair hearing; and

(3) the Office shall find:

> (i) whether, by a preponderance of the evidence, the State has proved that the committed person violated conditional release; and
>
> (ii) whether, by a preponderance of the evidence, the committed person nevertheless has proved eligibility for conditional release.

(h) *Report and exceptions.* (1) The Office promptly shall:

> (i) send a report of the hearing and determination to the court; and
>
> (ii) send copies of the report to the committed person, counsel for the committed person, the State's Attorney, and the Health Department.

(2) Within 5 days after receipt of the report of the Office, the committed person, the State's Attorney, or the Health Department may file exceptions to the determination of the Office.

(i) *Court action.* After the court considers the report of the Office, the evidence, and any exceptions filed, within 10 days after the court receives the report, the court shall:

> (1) revoke the conditional release and order the committed person returned to the facility designated by the Health Department;
>
> (2) modify the conditional release as required by the evidence;
>
> (3) continue the present conditions of release; or
>
> (4) extend the conditional release by an additional term of 5 years.

\*\*\*

(k) *Appeals.* (1) An appeal from a District Court order shall be on the record in circuit court.

(2) An appeal from a circuit court order shall be by application for leave to appeal to the Court of Special Appeals.

The Task Force Comment to HG § 12-120, predecessor to CP § 3-121, states that "another

major change is that the hearing will be an administrative hearing before a hearing officer

34

of the Department [of Health and Mental Hygiene], **with review by the court**, rather than a hearing in court as formerly provided. This change is for the sake of practicality and speeding the implementation of this procedure." (emphasis added). The Revisor's Note to CP § 3-121 further indicates that when it was recodified from HG § 3-120, aside from certain changes in terminology for accuracy or conformity, the only other changes were stylistic. This indicates a clear legislative intent to have the court perform judicial review of the ALJ's hearing and determination when a committed person is subject to the procedures of CP § 3-121. The call for judicial review under CP § 3-121 is consistent and harmonious with the language of CP § 3-117 calling for the court to hold a hearing "on the record that was made before the Office." This further bolsters Judge Moylan's interpretation that CP § 3-118 requires the court to perform judicial review after a hearing occurs in OAH.

We also find it relevant, as did Judge Moylan, that the only place the General Assembly explicitly "affords the possibility of a court procedure" is in CP § 3-119(c) and "not in combination with but as an alternative to an administrative procedure." *Byers*, 184 Md. App. at 528, 966 A.2d at 1000. In comparison, the General Assembly utilized language elsewhere in Title 3 indicating that the court performs the task of judicial review. For example, CP § 3-117 (b)(1) states that "[t]he court shall hold the hearing on the record that was made before the Office." Additionally, CP § 3-119(b)(2) states that "[t]he provisions of this title governing administrative hearing and judicial determination of eligibility for release apply to any application for release under this subsection[,]" incorporating by

35

reference the comprehensive administrative procedure set forth in CP §§ 3-114 through 3-118. This difference also demonstrates the General Assembly's intent to create an overall statutory scheme that calls for an administrative procedure, unless explicitly stated otherwise. To adopt the action taken by the Circuit Court in this case, or the procedure suggested by the appellees would result in inconsistencies within Title 3.

The Circuit Court erred in both Merchant's and Stoddard's cases when it found the statutory scheme of CP §§ 3-114, et seq., void as unconstitutional under the separation of powers doctrine. In Merchant's case, which arose under CP § 3-121, the Circuit Court erred when it held its own evidentiary hearing. As discussed above, it is clear that the trial judge also erred when he concluded that he was unpersuaded by the psychiatrist's testimony and unpersuaded that Merchant had met his burden of proof, even though he found there was sufficient evidence on the record to support the ALJ's recommendation that Merchant be conditionally released again. In Stoddard's case, Stoddard opted for the administrative procedure under CP § 3-119(b). Therefore, the Circuit Court erred when it held its own hearing on the merits of the case and declined to consider the ALJ's report. The court's actions ran counter to the mandate of CP § 3-119(a). Furthermore, the Circuit Court's actions in both cases frustrated the legislative intent to streamline and strengthen the procedures for the release of a person who was found not criminally responsible and "committed" in a criminal case.

**IN CASE MISC. NO. 16, CERTIFIED QUESTIONS OF LAW ANSWERED. COSTS TO BE DIVIDED**

**EQUALLY BETWEEN THE PARTIES.**


**IN CASE NO. 81, JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**